IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JAMES KIRBY BURKS, JR.,             *

Petitioner,                       *

v.                            *          Civil Action No. BAH-25-1075

DIRECTOR OF BUREAU OF PRISONS, et al.*

Respondents.              *

## MEMORANDUM OPINION

Petitioner James Kirby Burks, Jr., is self-represented and was incarcerated at the Federal Correctional Institution in Cumberland, Maryland ("FCI-Cumberland") at the time he filed this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. Burks alleges that the Bureau of Prisons ("BOP") improperly disallowed his accrued First Step Act ("FSA") time credits which delayed his release from BOP custody. ECF 1, at 7 (petition). Respondents filed a Motion to Dismiss or, in the alternative, for Summary Judgment, asserting that the petition should be dismissed because Burks has not exhausted administrative remedies, his claim is moot, and is otherwise without merit. ECF 10.[1] Burks was advised of his right to file a response in opposition to Respondents' motion and of the consequences of failing to do so. ECF 12. Burks filed a response in opposition, ECF 13, and Respondents replied, ECF 14. For the reasons that follow, the petition must be dismissed without prejudice.

## I.    BACKGROUND

Burks was convicted in the United States District Court for the Eastern District of Virginia of conspiracy to possess with intent to distribute crack cocaine and operating a continuing criminal

---

[1] Respondents' Motion for Extension of Time to respond to the Petition (ECF 6) is granted nunc pro tunc.

enterprise. ECF 1, at 1–2. On June 3, 1994, he was sentenced to two concurrent life terms of imprisonment, along with a five-year term of supervised release for each count. *See United States v. Burks*, 1:93-cr-00460-001 (E.D. Va. June 3, 1994), ECF 51. The judgment was amended on January 11, 2016, to dismiss Count 1, leaving the continuing criminal enterprise conviction for which Burks continued to serve a life sentence followed by a term of supervised release of five years. *Id.* at ECF 101. On January 17, 2025, President Joseph R. Biden Jr. issued an Executive Grant of Clemency commuting Petitioner's total imprisonment sentence "to expire on July 16, 2025." *Id.* at ECF 149.

Thereafter the Bureau of Prisons' Designation and Sentence Computation Center ("DSCC") revised Burks' records to reflect the July 16, 2025, release date. ECF 10-1, ("Booher Decl."), ¶ 7. Burks states that on February 2, 2025 the DSSC "officially recognized the commutation of Petitioner's sentence to 440 months by issuing a computation sheet which listed: 1) Petitioner's new statutory release date at July 16, 2025; 2) his new expiration full term date at July 24, 2030; and 3) his home detention date as January 16, 2025. ECF 1-6, at 2–3. Respondents explain that Burks' sentence was not actually modified to 440 months and note that this number was used as "a placeholder" in order to reflect that his sentence now expired on July 16, 2025, per the specific date noted in President Biden's grant of clemency. ECF 10, at 2 n.2. Burks asserts that the new computation sheet did not reflect the application of 1,020 earned FSA Time Credits which Burks had accrued from January 1, 2019 through December 31, 2024. ECF 1, at 7; ECF 10, at 7.

Joseph Booher, Burks' Case Manager at FCI-Cumberland, filed a sworn affidavit explaining that Burks was eligible to earn time credits under FSA "because [Burks'] current offense is not disqualifying under 28 U.S.C. § 3632 (d)(4)(D), and he is classified at a 'minimum'

risk for recidivism under [28 U.S.C.] § 3632(a)(1)." ECF 10-1, ¶ 8. After receiving Burks' new projected release date, Burks was reviewed for transfer to prerelease placement under the Second Chance Act. *Id.* at ¶ 9. On March 3, 2025, FCI-Cumberland referred Burks for prerelease placement and recommended his placement be in the range of 91 to 120 days to assist him transitioning into the community. *Id.*, at ¶ 10. Burks was transferred to home confinement on May 1, 2025, where he was to remain until his July 16, 2025 release. *Id.* at ¶ 11. BOP's online inmate locator reflected that Burks was "no longer in BOP custody" as of July 16, 2025. *See* Find an Inmate, Federal Bureau of Prisons, www.bop.gov/inmateloc/ (search by register number "19679-083") (last accessed January 19, 2026).

Burks asserts that he "initiated the Administrative Remedy Process (ARPP) seeking to have the earned FSA [good time credits] applied to his remaining sentence." ECF 1-6, at 3. The case manager denied Burks' BP-8 on February 5, 2025, and on February 13, 2025, Warden Rokosky denied Burks' BP-9 requesting application of the FSA credits. *Id.* On March 3, 2025, the Mid Atlantic Regional Office received Burks' BP-10 appeal of the Warden's denial. *Id.* The Regional Office's deadline to respond was extended until May 3, 2025. *Id.* Burks filed his Petition on March 31, 2025, over a month before the Regional Counsel's deadline to respond. *Id.*; *see also* ECF 1, at 4 ("I am on appeal to the Regional Director's Office, and they have been granted an extension until May 2, 2025. By time that the Administrative Remedy Program runs its course, the relief, which I seek, will be futile.").

Respondents explain that Burks filed AR 1228802-F1 at the institutional level on February 11, 2025, seeking to have 1,020 time credits applied to the remainder of his sentence. ECF 10-2, at ¶ 7. The institution responded to the remedy on February 13, 2025, advising that pursuant to the order of clemency his sentence was to expire on July 16, 2025, with any previously imposed

terms of supervision or other components of the sentence to remain intact; that Burks' release date was updated; and noting that Burks was not eligible for additional early release programs. ECF 10-2, at 14. On March 8, 2025, Burks appealed the institution's response to the Regional Office. *Id.* at 3 ¶ 8, at 18. On April 7, 2025, the Regional Office denied the appeal and advised that Burks' sentence had been audited and calculated in accordance with President Biden's clemency order, which specifically stated that Burks was to be released on July 16, 2025. *Id.*; *see also id.* at 17. On April 16, 2025, Burks appealed the Regional Office's response to the BOP's Central Office and that appeal remained pending as of the date of Respondents' response to the Petition. *Id.* at 3 ¶ 9.

## II.    STANDARD OF REVIEW

"The Federal Rules of Civil Procedure . . . , to the extent that they are not inconsistent with statutory provisions or [the Rules Governing Section 2254 Cases], may be applied" to habeas corpus proceedings. Rule 12, *Rules Governing § 2254 Cases in the U.S. Dist. Cts.*; *see also* Rule 1(b), *Rules Governing § 2254 Cases in the U.S. Dist. Cts.* (noting that  Section 2254 Rules apply to habeas corpus petitions filed under provisions other than § 2254). Under Federal Rule of Civil Procedure 12(b)(6), dismissal is appropriate where the complaint "fail[s] to state a claim upon which relief can be granted." In deciding a motion to dismiss, the Court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff [or petitioner]." *Washington v. Hous. Auth. of the City of Columbia*, 58 F.4th 170, 177 (4th Cir. 2023) (citing *Singer v. Reali*, 883 F.3d 425, 437 (4th Cir. 2018)).

"To survive a motion to dismiss, a complaint [or petition] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 8(a)(2) (noting that a complaint must contain "a short and plain statement of the

4

claim showing that the [plaintiff] is entitled to relief"). "The complaint [or petition] must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). At the same time, a "complaint [or petition] will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

## III.   DISCUSSION

### A. Mootness

The authority is conflicted on whether a petitioner's release from prison renders a habeas petition resting on allegations of incorrect time credit calculation entirely moot. *See Ewing v. Carter*, Civ. No. BAH-22-3029, 2024 WL 4289534, at *2 (D. Md. Sept. 25, 2024). Generally, the release of a prisoner renders moot any claims for injunctive or declaratory relief. *Snyder v. Maryland*, Civ. No. ELH-20-1030, 2023 WL 35249, at *3 (D. Md. Jan. 3, 2023) (citing *Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009)); *see also Wallace v. Jarvis*, 423 F. App'x 328 (4th Cir. 2011) ("While Wallace challenges the calculation of his release date, he has been released from custody, and he does not allege any collateral consequences that would warrant relief."). Further, the Fourth Circuit has held that overserving the custodial portion of a sentence cannot be remedied by, for example, shortening the supervised release period. *Jones v. Bolster*, 850 F. App'x 839, 839 (4th Cir. 2021) (per curiam) (holding petitioner's request for the restoration of his good-time credits was "moot because any time he allegedly overserved cannot be applied to shorten his supervised release term") (citing *United States v. Jackson*, 952 F.3d 492, 498 (4th Cir. 2020)). However, "[q]uestions about banked time [ ] arise in the context of supervised release." *Jackson*,

952 F.3d at 498. The "BOP has created extensive regulations concerning its duty to calculate sentences, including the treatment of banked time." *Id.* Among other things, BOP's regulations provide that "[a]ny prior custody time spent in official detention after the date of offense that was not awarded to the original sentence or elsewhere shall be awarded to the revocation term," but only when a defendant is sentenced to a term of incarceration for violating the terms of his supervised release. *Id.* (quoting BOP Program Statement § 5880.28, Sentence Computation Manual-CCCA of 1984 (1999) at 1–69). Accordingly, a determination that the petitioner overserved time in incarceration and thus that the time would be banked, or credited to him, follows *only if* he were to violate the conditions of his supervised release *and* be sentenced to serve a term of incarceration as a penalty.

Such a conclusion is, however, in tension with the idea that courts are to presume petitioners will not break the law or violate the terms of their supervised release. *O'Shea v. Littleton*, 414 U.S. 488, 497 (1974) ("[W]e are . . . unable to conclude that the case-or-controversy requirement is satisfied by general assertions or inferences that in the course of their activities respondents will be prosecuted for violating valid criminal laws. We assume that respondents will conduct their activities within the law and so avoid prosecution and conviction."). This conclusion also conflicts with the idea that the injury must be concrete, and not merely speculative. *Spencer v. Kemna*, 523 U.S. 1, 15 (1998) (rejecting collateral consequences exception's application to a parole violation on the basis that the parolee may commit a different crime in the future and have less favorable parole opportunities); *Ware v. Alderson*, Civ. No. 1:23-cv-00460, 2023 WL 4855308, at *3 (S.D. W. Va. July 10, 2023) ("Mere conjecture . . . that the prisoner may return to the first prison and again face the alleged wrong is not sufficient to meet the mootness exception."

(quoting *Owens v. FCI Beckley*, Civ. No. 5:12-03620, 2013 WL 4519803, at *7 (S.D. W. Va. Aug. 27, 2013))).

The Court notes that the weight of authority concludes that when a petitioner alleging an error in time calculations is released from custody, the petition is moot. *See, e.g., Palacio v. Sullivan*, 814 F. App'x 774, 775 (4th Cir. 2020) ("Therefore, even if Palacio were entitled to good conduct credits, his release from incarceration renders this claim moot."); *Forbes v. Warden, FCI McDowell*, No. 25-6325, 2025 WL 2709386, at *1 (4th Cir. Sept. 23, 2025) ("Forbes's claim that he is entitled to earn Federal Earned Time Credits under the First Step Act of 2018 is moot because Forbes has been released from the Bureau of Prisons[.]"); *Zinner v. Warden, FCI Loretto*, No. 2:24-CV-275, 2025 WL 676045, at *2 (E.D. Va. Mar. 3, 2025) ("While Petitioner alleges that BOP still used the wrong dates in its recalculation, . . . the court need not reach the merits of that dispute because Petitioner has since been released from confinement after President Biden commuted the balance of his sentence."); *Gross v. Unknown*, No. 7:22CV00688, 2023 WL 3026734, at *1 (W.D. Va. Apr. 20, 2023) ("In light of Gross's release, this court is no longer able to grant the habeas corpus relief he sought, which was the recalculation of his good-time credits."). This is unquestionably the case here as Burks was released from BOP custody in July of 2025 and is now presumably serving his term of supervised release. Regardless, even assuming that Burks' claim is somehow not moot, it nevertheless fails for a lack of administrative exhaustion.

## B. Administrative Exhaustion

Although 28 U.S.C. § 2241 does not contain a statutory exhaustion requirement, meaning exhaustion is not a jurisdictional prerequisite to bringing a § 2241 habeas petition, courts nevertheless apply a judicial exhaustion requirement "in the absence of exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Timms v. Johns*,

627 F.3d 525, 530–31 (4th Cir. 2010) (internal quotation marks and citation omitted). This exhaustion requirement recognizes that "prudential concerns, such as comity and the orderly administration of criminal justice, may require a federal court to forgo the exercise of its habeas corpus power." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citation and internal quotation marks omitted); *see also Boumediene v. Bush*, 553 U.S. 723, 793 (2008). "Failure to exhaust [prior to filing a § 2241 petition] may only be excused upon a showing of cause and prejudice." *McClung v. Shearin*, 90 F. App'x 444, 445 (4th Cir. 2004) (citing *Carmona v. United States Bureau of Prisons*, 243 F.3d 629, 634 (2d Cir. 2001)).

Burks concedes he did not exhaust his administrative remedies before filing his petition. ECF 1, at 4 (noting that his appeal to the Regional Director was pending when he filed his petition); ECF 1-6, at 15 ("Petitioner requests that the court excuse the exhaustion of the ARP . . . ."). Burks asserts, however, that the then-imminent expiration of his sentence and his belief that the BOP had already determined his sentence was properly calculated constitute exceptional circumstances excusing the lapse and that the Court should waive any exhaustion requirement. ECF 1-6, at 14. The Court disagrees.

As noted, Burks commenced the informal administrative remedy process in February of 2025 and his request was denied on February 13, 2025. ECF 10-2, at 3 ¶ 7. On March 8, 2025, he appealed the institution's response to the Regional Office. *Id.* at ¶ 8. Before receiving a response, he instituted this case on March 31, 2025. His appeal to the Regional Office was subsequently denied on April 7, 2025. *Id.*; *see also id.* at 17. While Burks argues he did not need to pursue his administrative remedies further after the initial denial both because he believed such an effort would not be successful and because he would be released before resolution of the

administrative remedy process, these circumstances – even if true – are not sufficient to warrant waiver of the exhaustion requirement.

This Court has previously found that "[u]nless the agency is certain to rule adversely, . . . a petitioner's unsupported prediction of failure does not excuse his lack of administrative exhaustion."[2] *Wright v. Warden, FCI-Cumberland*, Civ. No. RDB-10-671, 2010 WL 1258181, at *1 (D. Md. Mar. 24, 2010) (citing *Thetford Prop. IV Ltd. P'ship v. U.S. Dep't of Hous. & Urban Dev.*, 907 F.2d 445, 450 (4th Cir. 1990)); *Ewing*, 2024 WL 4289534 at * 3. Further, under the relevant BOP regulations, the entire administrative exhaustion process takes about four months. *See Wright*, 2010 WL 1258181, at *2 n.4 (citing 28 C.F.R. §§ 542.14 – 542.15); *Larue v. Adams*, 2006 WL 1674487, at *9 n.11 (S.D. W. Va. June 12, 2006)). Thus, the Court observes that had Burks pursued the administrative process after his initial informal review request was denied, based on response deadlines prescribed by regulation and the actual date of responses, the administrative review process may have been resolved before his projected release date in July of 2025.

While the Fourth Circuit has not addressed exhaustion under these precise circumstances, courts in this circuit and beyond have found that the exhaustion requirement is not excused because of a petitioner's impending release from custody. *See Richmond v. Scibana*, 387 F.3d 602, 604 (7th Cir. 2004) (stating "[a] prisoner cannot manufacture exigency by tarrying," in response to a petitioner's contention that "[l]ooming dates excuse[d] exhaustion" in a habeas petition); *Reese v. Heckard*, No. 5:22-CV-00033, 2022 WL 4100849, at *5 (S.D. W. Va. Aug. 5, 2022) (noting that

---

[2] An adverse ruling is "certain" upon a "a clear showing that an administrative agency has taken a hard and fast position." *Thetford Properties IV Ltd. P'ship v. U.S. Dep't of Hous. & Urb. Dev.*, 907 F.2d 445, 450 (4th Cir. 1990). Otherwise, "a litigant's prognostication that he is likely to fail before an agency is not a sufficient reason to excuse the lack of exhaustion." *Id.* Burks has not shown that an adverse ruling was certain at the time he filed his petition and his appeal was still pending.

"exhaustion is not waived simply because Petitioner believes that the length of the administrative process would preclude him from receiving full relief" (citations omitted)), *report and recommendation adopted*, No. 5:22-CV-00033, 2022 WL 4100268 (S.D.W. Va. Sept. 7, 2022); *Sutton v. Moser*, No. 2:19-CV-210, 2019 WL 2743959, at *4 (W.D. Pa. July 1, 2019) ("Additionally, district courts within the Third Circuit have repeatedly rejected the argument that a federal prisoner can be excused from the exhaustion requirement simply because he is approaching his projected release date and may not finish his administrative appeal before a potential habeas claim would become moot."); *Garrison v. Stansberry*, No. 2:08-CV-522, 2009 WL 1160115, *3, n. 2 (E.D. Va. Apr. 29, 2009) ("To grant review of unexhausted claims because of this time-sensitivity may well encourage similar petitions in this Court before the administrative remedy process has run its course. Such a disposition would both undermine the effectiveness of the administrative review process and burden the Court with superfluous claims.").

Moreover, Burks' entitlement to the application of FSA credits was not so certain that exhaustion of administrative remedies would have been futile. *See Reese*, 2022 WL 4100849, at *5; *Little v. Andrews*, No. 3:20CV863, 2021 WL 1895890, at *2 (E.D. Va. May 11, 2021); *Jones v. Young*, No. 5:21-CV-00552, 2022 WL 2446271, at *5 (S.D. W. Va. May 5, 2022) ("Petitioner's entitlement to the application of FSA credits is not so certain that it could be considered futile to exhaust his administrative remedies."), *report and recommendation adopted*, No. 5:21-CV-00552, 2022 WL 2442113 (S.D.W. Va. July 5, 2022); *Brown v. Warden of FCI Williamsburg*, No. 8:19-cv-00546-HMH-JDA, 2019 WL 1780747, at *8 (D.S.C. Mar. 25, 2019) (finding petitioner could not show futility of exhaustion because the BOP should have the opportunity to consider this issue internally while it implements the First Step Act's requirements); *Sanchez-Partida v. Dunbar*, No. 623CV01219BHHKFM, 2023 WL 3587971, at *3 (D.S.C. May 1, 2023) (finding exhaustion was

10

not futile despite Petitioner's argument he is entitled to immediate release through application of time credits and case required full development of administrative record), *report and recommendation adopted*, No. CV 6:23-1219-BHH, 2023 WL 3586500 (D.S.C. May 22, 2023); *Amirnazmi v. Scism*, No. 3:11-CV-273, 2011 WL 5854579, at *3, *7 (M.D. Pa. Nov. 21, 2011) (adopting magistrate judge's finding that "exhaustion is not rendered futile simply because an inmate grieving under the Second Chance Act anticipates that he will be unsuccessful in his administrative appeals before the twelve (12) month release mark").

"Typically, courts have not applied the futility exception based on a timeliness argument." *Ortiz v. Zickefoose*, Civ. No. 10-6767 NLH, 2011 WL 6140741, at *4 (D.N.J. Dec. 8, 2011). Some courts have opined specifically that "time restriction" arguments like Burks' should be denied "because they allow prisoners to engage in the self-serving strategy of waiting until it is too late to engage in the administrative remedy process, and then argue that there is insufficient time for those remedies to run their course." *Romano v. Warden, FCI Fairton*, No. CV-23-1052 (CPO), 2023 WL 3303450, at *5 (D.N.J. May 8, 2023); *see also Ewing*, 2024 WL 4289534, at *4 (collecting cases).

Lastly, exhaustion "serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency." *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992). Exhaustion is "normally desirable" in order to allow for the development of a factual record and to permit the agency an opportunity to exercise its discretion or apply its expertise, *McKart v. United States*, 395 U.S. 185, 193–94 (1969), as well as to allow the agency to correct its mistakes, which conserves judicial resources at the same time, *McCarthy*, 503 U.S. at 145–46. At the time Burks filed his petition, the BOP had only been given the chance at the initial resolution of Burks' claims rather than the four opportunities required under the administrative remedy process to review its decision. *See* 28 C.F.R. §§ 542.10–542.19. As such, it had not been given full opportunity to correct

11

potential mistakes, if any, at the time the petition was filed and the record is therefore incomplete. Additionally, the full weight of the BOP's expertise was not applied prior to the filing of the petition, as each of the four steps of the administrative remedy process submits an inmate's claim to an increasing level of authority within the BOP, culminating with review by the General Counsel. *Id.* Burks was perhaps justified in his concern that the appeals process might extend past his release date. But this concern, however reasonable, is present in a substantial number of time-credit cases and does not dispense of the requirement that a petitioner utilize the appeals process. In sum, the Court finds there is no basis to waive the exhaustion requirement here given that there was still sufficient time for resolution of his appeals before his sentence was set to expire in July of 2025 and because Burks' assertion that administrative remedy process would be futile was speculative.

Because the petition will be dismissed on other grounds, the Court does not decide Respondent's remaining argument.

## IV.    CONCLUSION

For the reasons set forth above, the Court will construe Respondents' motion to dismiss, or in the alternative, for summary judgment, ECF 10, as one to dismiss and GRANT the motion. The petition will be DISMISSED WITHOUT PREJUDICE for failure to exhaust administrative remedies. A separate order follows.

Dated: January 20, 2026                                        /s/
                                                      Brendan A. Hurson
                                                      United States District Judge